1
2
3
4
5

6                    UNITED STATES DISTRICT COURT

7                         DISTRICT OF NEVADA

8                              * * *

9    ALAN FLONNES,                          Case No. 2:12-cv-01065-APG-CWH

10                  Plaintiff,
                                            **ORDER GRANTING**
11   v.                                     **RECONSIDERATION AND DENYING**
                                            **LEAVE TO AMEND**
12   PROPERTY & CASUALTY INSURANCE
     COMPANY OF HARTFORD,
13
                   Defendant.
14

15

16   **I.    BACKGROUND**

17         Alan Flonnes ("Flonnes") brought claims against Property & Casualty Insurance

18   Company of Hartford ("Hartford") for (i) breach of contract; (ii) unfair claims practices in

19   violation of NRS 686A.310; and (iii) breach of the implied covenant of good faith and fair

20   dealing (the "implied covenant" or "bad faith" claim). (Dkt. No. 1.)  In October 2012, the court

21   dismissed *with prejudice* the unfair practices and implied covenant claims, allowing only the

22   breach of contract claim to proceed. (the "Prior Order," Dkt. No. 13.)  The Prior Order also

23   denied leave to amend because the first proposed amended complaint (the "First PAC," Dkt. No.

24   9, Ex. 1) was futile as not alleging sufficient facts to comply with the Rule 8 pleading standards

25   established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556

26   U.S. 662 (2009). (Dkt. No. 13.)

27         On March 27, 2013, Flonnes filed his "Motion for Reconsideration of Order Denying

28   Counter-Motion to Amend Complaint" (the "Motion"). (Dkt. No. 22.)  Attached to the Motion

were an "expert opinion letter" by Dennis M. Prince, Esq. (the "Prince Report"), which purports to provide a "comprehensive claim handling analysis" for Flonnes' insurance claim, and a second proposed amended complaint (the "Second PAC"). (*Id.*) The court treats the Motion as requesting both reconsideration of the Prior Order and leave to amend the Complaint. Hartford responded on April 15 and Flonnes replied on April 25. (Dkt. Nos. 41, 50.) The court heard oral argument on the Motion on June 12.

Flonnes seeks reconsideration under Rule 54(b) and under the court's inherent power to reconsider, set aside, and amend interlocutory orders. He contends that the court committed legal error when it dismissed the Second and Third Claims with prejudice. He then argues that new evidence obtained in discovery justifies leave to amend the Complaint to revive the Second and Third Claims. Hartford responds that Flonnes has had the allegedly new evidence since this case's inception, and the Second PAC still contains only generalized assertions that are insufficient to revive the Second and Third Claims under *Iqbal* and *Twombly*. Hartford also contests the timeliness of the Motion because the court-approved discovery plan specified February 19, 2013 as the deadline for motions to amend pleadings. (Dkt. No. 16.)

**II.     ANALYSIS**

       **A.     Reconsideration**

             **1.     Legal Standard**

The district court's discretion to reopen or reconsider an order is governed by the law-of-the-case doctrine. *W. Birkenfeld Trust v. Bailey*, 837 F. Supp. 1083, 1085 (E.D. Wash. 1983). Three exceptions to this doctrine permit the court to alter its prior decision, as long as the court has not been divested of jurisdiction over the matter: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence" has surfaced that was not previously obtainable in the exercise of due diligence. *Reed v. Town of Gilbert, Ariz.*, 707 F.3d 1057, 1067 n.9 (9th Cir. 2013); *U.S. v. Matthews*, 643 F.3d 9, 14 (1st Cir. 2011).

1    A complaint or individual claim should be dismissed without leave to amend only when

2    "it is clear . . . that the complaint could not be saved by amendment." *Steckman v. Hart Brewing,*

3    *Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

4    ### 2.    Application

5    The court issued the Prior Order when discovery was barely underway. The unfair

6    practices and bad faith claims were dismissed *with prejudice* for failure to plead sufficient facts to

7    support plausible claims for relief. Dismissal with prejudice was premature, however. It is

8    possible that these claims could be saved by amendment at some point (that is, they are not barred

9    as a matter of law). Dismissal with prejudice was legal error and worked a manifest injustice by

10   barring claims that may be salvageable upon the discovery of relevant facts giving rise to such

11   claims. Upon reconsideration, under Rule 54(b), the court orders the Prior Order revised such

12   that the Second and Third Claims were dismissed *without* prejudice. The next issue is whether

13   leave to amend should be granted under Rule 15 such that the Second PAC becomes the operative

14   complaint.

15   ### B.    Leave to Amend

16   ### 1.    Rule 15

17   In relevant part, Rule 15 provides that "a party may amend its pleading only with . . . the

18   court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P.

19   15(a)(2). Rule 15's policy of favoring amendments should be applied with "extreme liberality."

20   *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Several factors guide the court's discretion in

21   determining whether to grant leave to amend: bad faith, undue delay, prejudice to the opposing

22   party, futility of the amendment, and whether the plaintiff has previously amended the complaint.

23   *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (internal

24   quotation marks and citation omitted); *Waldrip v. Hall*, 548 F.3d 729, 732 (9th Cir. 2008).

25   A party's undue delay in moving for leave to amend may be excused if there is new

26   evidence to support the amended pleading. *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 609 F.

27   Supp. 2d 1090, 1093 (E.D. Cal. 2009); *see Buel v. City & Cnty. of San Francisco*, 166 F. App'x

28

1   901, 903 (9th Cir. 2006).  Conversely, the court will not grant leave to amend if the allegedly new

2   evidence was available or reasonably obtainable with due diligence at an earlier time.

3        Although the court should assess all the factors, they are not equally weighted.  The court

4   may deny leave to amend on the sole basis that the "proffered amendments would be nothing

5   more than an exercise in futility."  *Bonin*, 59 F.3d at 845.  Amendment of a complaint is futile if

6   the complaint as amended fails to meet the pleading requirements of Rule 8.

7                    **2.      Rule 8 Pleading Standard — *Iqbal* and *Twombly***

8        District courts must apply a two-step approach when considering the pleading standards of

9   Rule 8 and motions to dismiss under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 679.  The same approach

10  applies when considering a proposed amended complaint.  *See Sonoma Cnty. Ass'n of Retired*

11  *Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1117–18 (9th Cir. 2013).  First, the court must accept

12  as true all well-pleaded factual allegations; legal conclusions, however, are not entitled to the

13  same assumption of truth.  *Iqbal*, 556 U.S. at 679.  Mere recitals of the elements of a cause of

14  action, supported only by conclusory statements, do not suffice.  *Id.* at 678.  Second, the court

15  must consider whether the factual allegations in the complaint allege a plausible claim for relief.

16  *Id.* at 679.  A claim is facially plausible when the complaint alleges facts that allow the court to

17  draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Id.* at 663.

18  Where the complaint does not permit the court to infer more than the mere possibility of

19  misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to

20  relief." *Id.* at 679 (internal quotation marks and citation omitted).  When the claims have not

21  crossed the line from conceivable to plausible, the complaint must be dismissed.  *Twombly*, 550

22  U.S. at 570.

23                    **3.      Unfair Claims Practices — NEV. REV. STAT. § 686A.310**

24       In the Second PAC, Flonnes asserts claims under NRS 686A.310(1)(e) and (n):

25       [1] Engaging in any of the following activities is considered to be an unfair
         practice: . . .

26
         (e) Failing to effectuate prompt, fair and equitable settlements of claims in
27       which liability of the insurer has become reasonably clear. . . .

28                         * * *

                                        4

1

2          (n) Failing to provide promptly to an insured a reasonable explanation of the
basis in the insurance policy, with respect to the facts of the insured's claim
and the applicable law, for the denial of the claim or for an offer to settle or
3          compromise the claim.

4  NEV. REV. STAT. § 686A.310(1)(e), (n) (2011).

5       The Prior Order dismissed this claim because the Complaint and First PAC set forth only

6  general, conclusory allegations. The Second PAC includes new allegations, including details of

7  Flonnes' injuries and his doctors' qualifications. Flonnes alleges that Hartford has possession of

8  all of his medical records, and that despite unequivocal evidence of his chronic medical

9  conditions, Hartford unfairly and improperly evaluated his claim.

10      With regard to NRS 686A.310(1)(e), Flonnes argues that liability was reasonably clear

11  when Hartford took possession of his medical records. He alleges that Hartford was aware that

12  (i) medical costs to reach his pre-accident condition will exceed $100,000; (ii) his current medical

13  costs are approximately $35,000; and (iii) similar claims have been resolved for over $300,000.

14  Flonnes fails to explain, however, when Hartford became aware of these cost-related facts or

15  when Hartford acquired his medical records. No explanation is offered as to why the factual

16  allegations were not made earlier. Flonnes contends that more factual support will be available

17  once Hartford's claims file is produced, but that that does not explain why the facts currently

18  alleged could not have been pled sooner.

19      As to NRS 686A.310(1)(n), Flonnes argues that Hartford has failed to provide a

20  reasonable explanation for its decision, despite overwhelming medical evidence demonstrating

21  the severity of his injuries and his need for continuing care. He also argues that Hartford has

22  failed to explain how it valued his claim at approximately $110,000 (which Hartford has now

23  done in its discovery responses). Flonnes does not explain, however, when the evidence of his

24  medical conditions became available to him and/or was made available to Hartford.

25  Consequently, the court cannot determine whether this information is truly new or not.

26      In addition to the timeliness problem, the unfair practices claim as pled in the Second

27  PAC does not withstand analysis under *Iqbal* and *Twombly*. Regarding NRS 686A.310(1)(e),

28  Flonnes' assertion that the medical costs will certainly exceed $100,000 is speculative, and there

1   are no facts to connect Flonnes' case with the "similar" cases that were settled for over \$300,000.

2   Even if this evidence were truly new, it would not support a reasonable inference that Hartford's

3   proposed settlement for approximately \$10,000 (above the \$100,000 from the tortfeasor's insurer)

4   was not prompt, fair, or equitable. *See Iqbal*, 556 U.S. at 663. As to 686A.310(1)(n), the Second

5   PAC merely recites the elements of this claim—namely, that Hartford failed to provide a

6   reasonable explanation. This allegation is not supported with facts upon which the court could

7   reasonably infer that Hartford violated NRS 686A.310(1)(n). *See id.*

8       In sum, Flonnes has failed to demonstrate that the facts supporting the new allegations in

9   the Second PAC were unavailable or not reasonably obtainable with due diligence earlier (i.e.,

10  when Flonnes filed the First PAC). Furthermore, amendment would be futile, as the unfair

11  practices claim in the Second PAC does not meet the Rule 8 standard set forth in *Iqbal* and

12  *Twombly*. Accordingly, the court denies leave to amend the Complaint to revive the unfair

13  practices claim.

14          **4.     Implied Covenant of Good Faith and Fair Dealing**

15      Under Nevada law, "[b]ad faith is the absence of a reasonable basis for denying benefits

16  . . . and the defendant's knowledge or reckless disregard for the lack of a reasonable basis for

17  denying the claim." *Pioneer Chlor Alkali Co., Inc. v. Nat'l Fire Ins. Co. of Pittsburgh, Pa.*, 863

18  F. Supp. 1237, 1242 (D. Nev. 1994). More succinctly, "[b]ad faith is established where the

19  insurer acts unreasonably and with knowledge there is no reasonable basis for its conduct." *Guar.*

20  *Nat'l Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). Thus, a bad faith claim has both an

21  objective element and a subjective element. The Prior Order denied leave to amend because the

22  First PAC put forth no facts to support the subjective element: that Hartford knew or recklessly

23  disregarded that it had no reasonable basis to deny Flonnes' claim.

24      The Second PAC asserts that the subjective element of bad faith is shown by Hartford's

25  possession of Flonnes' medical records/bills and its awareness of cases with similar injuries

26  settling for more than \$300,000. Flonnes contends in his Reply that he obtained "unequivocal"

27  evidence of Hartford's bad faith only when Hartford provided its initial disclosures and responded

28  to his written discovery. Specifically, based on Hartford's responses to interrogatories, Flonnes

6

1   alleges that Hartford ignored the opinions of his two treating medical providers and denied the

2   maximum policy limits at the sole direction of two insurance adjusters with no medical training.

3          A decision based solely on the opinions of non-medical experts in light of Flonnes'

4   substantial medical records and treatment history might reasonably imply reckless disregard for

5   the lack of a reasonable basis to deny a claim for medical costs. But the court's inquiry does not

6   stop at the initial denial of Flonnes' insurance claim. Hartford later retained Derek Duke, M.D. to

7   perform a records review. In light of Hartford's hiring of a medical expert to review and affirm

8   the findings of its adjusters, the court cannot reasonably infer the subjective element of bad faith.

9   Flonnes' reliance on the Prince Report is unconvincing. Mr. Prince is not a medical expert and is

10  not in a position to determine whether Hartford's processes were fair or unbiased. The Prince

11  Report is also problematic in that it does not state whether its conclusions are based on evidence

12  available before discovery or only during discovery.

13         Moreover, Flonnes cites no legal authority for his propositions that an insurer must

14  (i) perform an *independent* investigation or medical review; and (ii) perform an *in-person* medical

15  exam of the insured. At the hearing, Flonnes' cited two cases to support his assertion that an

16  insurer must give *equal* consideration to its own medical records/reports and to an insured's

17  medical records/reports, but those two cases are inapposite.

18         In *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 322 (Nev. 2009), the Nevada Supreme Court

19  held that an insurer must give "equal consideration to the insured's interest." But this statement

20  was made in the context of that court's holding that the implied covenant of good faith and fair

21  dealing obligates insurers to adequately inform insureds of settlement offers; medical data were

22  not at issue. *Id.* This "equal consideration" does not reasonably extend to the insurer's

23  consideration of the insurer's and the insured's competing medical data.

24         In *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251 (9th Cir. 1991), the Ninth Circuit

25  analyzed a bad faith claim under Arizona law. One of the factors to determine liability was

26  whether the insurer properly investigated the claim. *Id.* at 254. The court upheld the bad faith

27  judgment, largely because the insurer "never thoroughly investigated the [car] accident," deposed

28  only the insured, and hired an accident reconstructionist only once the insured's assets were at

7

1   stake in the bad faith suit. *Id.* The circuit court did not discuss the insurer's duty to weigh

2   medical evidence provided by the insured. *Id.*

3       As there appears to be no legal basis for the particular duties Flonnes' purports to impose

4   on Hartford concerning the review of his medical data, and the non-conclusory, factual

5   allegations in the Second PAC supporting the subjective element of bad faith do not rise to the

6   level of plausibility required under Rule 8, the court denies leave to amend the Complaint to

7   revive the bad faith claim.

8   **III.   CONCLUSION**

9       The court grants in part and denies in part the Motion. The court grants reconsideration

10  because the Prior Order's dismissal of the Second and Third Claims with prejudice was an error

11  of law and worked a manifest injustice against Flonnes. The court denies leave to amend because

12  Flonnes did not sufficiently explain why the facts supporting the new allegations in the Second

13  PAC were not previously available or reasonably obtainable with due diligence at the relevant

14  earlier time, and because the Second PAC does not meet the Rule 8 pleading standard under *Iqbal*

15  and *Twombly*.

16      Accordingly, the court hereby ORDERS:

17      1.   The Prior Order (Dkt. No. 13) is revised under Rule 54(b) such that the Second and

18          Third Claims (unfair claims practices and bad faith) were dismissed *without* prejudice.

19      2.   Leave to amend under Rule 15 is denied *without* prejudice.[1]

20      DATED this 17th day of June, 2013.

21

22

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

23

24

25

26

27       [1] Magistrate Judge Hoffman's Order compelling production of Hartford's entire claims

28   file (Dkt. No. 66) remains in effect. This Order does not alter in any way Hartford's obligation to comply with that Order.